IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA
AT MUSKOGEE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ALYSSA LYNN TURNER,<br><br>Defendant. | Case No. 6:21-cr-00270-JWD |

**MEMORANDUM REGARDING THE PLEA AGREEMENT**

COMES NOW the defendant, Alyssa Lynn Turner, by and through counsel, to address the Court's Order (Docket No. 88) regarding the validity of the plea agreement and whether is it supported by applicable case law.

Ms. Turner is charged with three counts in the superseding indictment. Count One charges a violation of 18 U.S.C. §§ 1111(a), 1151, and 1152, murder in Indian Country of Emmett Carshall. Count Two charges a violation of 18 U.S.C. § 924(c)(1)(A)(i), (ii) &(iii), while Count Three charges a violation of 18 U.S.C. § 924(j)(1). Counts Two and Three allege separate federal firearms offenses for the same act of murdering the same victim on the same date.

On June 10, 2022, as set forth in a felony Information, Ms. Turner pled guilty to Voluntary Manslaughter in violation of 18 U.S.C. §§ 112, 1151, and 1152. The plea was pursuant to a Fed. R. Crim. P. 11(c)(1)(C) plea agreement in which the recommended and

agreed upon sentence by the government and Ms. Turner is 120 months of imprisonment, and 3 years supervised release. Docket No. 73 at 8.  Ms. Turner also agreed to waive her appellate, post-conviction, departure, and variance rights. *Id*. at 4-5.

The facts of this case start before the ultimate offense.  Prior to July 2, 2021, Alyssa Turner and Emmett Carshall were dating, and Mr. Carshall was seriously and routinely abusive to Ms. Turner.  On the evening of July 2, 2021, Ms. Turner's mother, Amy Turner, was driving Ms. Turner and Mr. Carshall into the town of Wilburton from Amy Turner's rural property.  The intention was to stop at the Dollar General and drop off Mr. Carshall at his mother's house because both Ms. Turner and Amy Turner wanted him out of their house.

From the backset, Mr. Carshall was first yelling at, and then began assaulting Ms. Turner (repeatedly grabbing her hair and yanking her head back and beating her in the chest with a cellphone) and would not stop.  Amy Turner then pulled the car over and Ms. Turner tried to get Mr. Carshall to get out of the car.   Unbeknownst to Amy Turner or Mr. Carshall, Ms. Turner grabbed the gun from her mother's purse, got out of the car and tried to open the back passenger door to get Mr. Carshall out.  A struggle with the door ensued with Ms. Turner trying to get Mr. Carshall out of the car.  When Mr. Carshall refused to get out and had threatened the lives of both Ms. Turner and Amy Turner, Ms. Turner shot her mother's gun through the back passenger window, striking and killing Mr. Carshall.  Following her arrest that evening, Ms. Turner showed the

deputies bruises on her legs, arms, and neck from the recent abuse by Mr. Carshall. Photographs of those injuries were later taken by the Latimer County Jail.

The parties agreed to the plea agreement after considering various factors, including "the events leading up to the commission of the offence; judicial economy; and the interests of justice." Docket No. 73 at 8. The parties also considered Ms. Turner's acceptance of responsibility, and the "legal, factual, and evidentiary issues presented by the case." *Id*. The parties agreed this is the appropriate disposition of the case and the sentence is "sufficient, but not greater than necessary, to comply with the sentencing factors set forth in 18 U.S.C. § 3553(a) for this particular case and this individual defendant." *Id*.

It is up to this Court to determine whether to accept the Rule 11(c)(1)(C) plea agreement. In making that determination, the Court must base its decision on the federal sentencing guidelines, and the 18 U.S.C. § 3553(a) factors. Ms. Turner's final PSR indicates the guideline range for voluntary manslaughter in her case is 70 to 87 months, to which both Ms. Turner and the government agree are calculated correctly. A sentence of 120 months obviously falls outside of the guideline range set for voluntary manslaughter in the PSR, but as set forth below, specific, justifiable reasons are provided to accept this sentence.

Ms. Turner submits that the plea agreement satisfies the applicable legal standards, including *Hughes v. United States*, 138 S. Ct. 1765, 1773 (2018); *Freeman v. United States*, 564 U.S. 522, 525-26, 529-530 (2011); and USSG § 6B1.2.

The sentencing guidelines with regard to plea agreements under Rule 11(c)(1)(C) indicate that the Court may accept the agreement if it is satisfied that either "the agreed sentence is within the applicable guideline range" or "the agreed sentence is outside the applicable guideline range for justifiable reasons" and "those reasons are set forth with specificity in the statement of reasons form." USSG § 6B1.2(c).  For Ms. Turner, because the agreed sentence is outside of the applicable guideline range, the Court must determine whether there are justifiable reasons for a 120-month sentence.

Both *Hughes* and *Freeman* address defendants who were challenging their Rule 11(c)(1)(C) sentences after a retroactive guideline amendment lowered their guideline ranges under 18 U.S.C. § 3582(c)(2).

*Hughes* stated that in determining whether a later modification could be made to a sentence, it is necessary to determine in the original sentence "if the [guideline] range was a basis for the court's exercise of discretion in imposing a sentence." *Hughes*, 138 S. Ct. at 1775.  While the guidelines are advisory, it is the usual case that the Court uses the guidelines as a framework in determining what is an appropriate sentence. *Id*. at 1776.  In the end, the Court has discretion to impose a sentence that is "compatible" with the guidelines. *Id*. at 1778.  In this case, a sentence of 120 months is compatible with the guidelines when taking into consideration the other specific facts and characteristics present in this case.

*Freeman* further states that the guidelines are a starting point, and one of many factors to determine the sentence, but emphasizes that the guidelines are advisory and not

4

every sentence is consistent with the calculated guideline range. *Freeman*, 564 U.S. at 529. Such is the case with the facts and circumstances of Ms. Turner's case.

Furthermore, in this case, whether a future guideline amendment would lower Ms. Turner's guideline range, Ms. Turner would have still agreed to a sentence above her guideline range, and therefore a reduction would not likely occur. She also agreed in the plea agreement, to waive her right to request a modification of her sentence under 18 U.S.C. § 3582(c). Docket No. 73 at 4.

Ms. Turner and the government were prepared to proceed to trial in this case, and Ms. Turner gave notice that she would be presenting self-defense, and defense of another as the justification for her conduct at trial. Ms. Turner provided the government, and later U.S. Probation with the lengthy Report of Domestic Violence Evaluation by Dr. Karla Fischer. This report is filed under seal as Exhibit A to this memorandum. As a result of pretrial negotiations between the parties, and the domestic violence that proceeded the shooting of Mr. Carshall, the parties agreed for Ms. Turner to plead to Voluntary Manslaughter, as she committed the offense under the heat of passion as a response to her abuse. The parties agreed to plead to an Information, that the charges in the superseding indictment would be dismissed upon acceptance of the plea agreement, and to a sentence of 120 months. Had Ms. Turner been convicted of the charges in the superseding indictment, she would be facing life in prison.

Because the facts of the case, as indicated above, and in the offense conduct section of the PSR, are most closely aligned with the elements of voluntary manslaughter,

5

that charge was chosen. The 120-month sentence was agreed upon to serve justice and to recognize the severity of the offense and the life taken, which is why it is over the guideline range of 70 to 87 months but is less than her guideline range for first or second degree murder. It is solely within this Court's discretion whether to accept the plea agreement in this case, and Ms. Turner respectfully requests its acceptance.

Ms. Turner has accepted responsibility for her conduct and has saved the government the time and expense of a trial. The nature and circumstances of the offense, and the individual characteristics of Ms. Turner support the acceptance of the plea agreement in this case. Such a sentence takes into consideration the sentencing guideline range, that a life was taken, will serve as a deterrent for Ms. Turner and those who know of the offense, will protect the public, will provide Ms. Turner with punishment and rehabilitative treatment, and will avoid unwarranted sentencing disparities.

WHEREFORE, based on the foregoing, Ms. Turner respectfully moves this Honorable Court to accept the plea agreement in her case. Specific, justifiable reasons support the plea agreement and the agreed sentence. The plea agreement complies with applicable law and Ms. Turner respectfully requests that the Court accept the plea agreement and impose the agreed upon sentence.

When a sentencing date and sentencing deadlines are set by the Court, Ms. Turner plans on filing an additional sentencing memorandum further addressing the 18 U.S.C. § 3553(a) factors which also support this sentence.

Respectfully Submitted May 30, 2023,

FEDERAL PUBLIC DEFENDER'S OFFICE
Northern and Southern Districts of Iowa

*/s/ Melanie S. Keiper*
Melanie S. Keiper, Assistant Federal Defender
400 Locust Street, Suite 340
Des Moines, Iowa 50309-2353
PHONE: (515) 309-9610
FAX: (515) 309-9625
E-MAIL: melanie_keiper@fd.org
ATTORNEY FOR DEFENDANT

CERTIFICATE OF SERVICE

I hereby certify that on May 30, 2023, I electronically filed this document with the Clerk of Court using the ECF system, which will serve it on the appropriate parties.

*/s/ Morgan Conn*, Paralegal